```
                   UNITED STATES BANKRUPTCY COURT
                  FOR THE NORTHERN DISTRICT OF IOWA


IN RE:                          )
                                )      Chapter 7
WAYNE ENGINEERING CORP.,        )
                                )      Bankruptcy No. 05-03394
      Debtor.                   )
```

### ORDER RE: OBJECTION TO CLAIM NO. 52

This matter came before the undersigned on January 4, 2007 pursuant to assignment. Trustee Wesley B. Huisinga appeared with attorney Marty Rowlet. Attorneys Renee Hanrahan and Paul Bauch represented Claimants Innisbrook Equity Group and Jacques Hopkins. After the presentation of evidence and argument, the Court took the matter under advisement. The time for filing briefs has passed and this matter is ready for resolution. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B).

### STATEMENT OF THE CASE

Trustee objects to the Claim filed by Innisbrook Equity Group/Jacques Hopkins ("IEG"). IEG filed a proof of claim for $282,500 which it asserts is entitled to priority. Trustee argues this claim, which arises out of a consulting agreement with Debtor's prepetition receiver, should be denied.

### FINDINGS OF FACT

Wayne Engineering filed a Chapter 11 petition on July 18, 2005. In June 2004, in an action filed by U.S. Bank to enforce its security agreements against Wayne Engineering, the Iowa District Court appointed a receiver for Debtor's assets and business operations. The court entered an order on September 24, 2004 approving the receiver's employment of IEG pursuant to the terms of a "Transaction Consulting Agreement" (the "Agreement"). A copy of this Agreement is attached to IEG's Proof of Claim No. 52.

IEG's Claim also includes an invoice dated April 27, 2005 for $282,500, or "5% of $5,650,000 estimated" for "Sale of US Bank indebtedness." The sale of U.S. Bank's debt took place in early May 2005 when U.S. Bank sold its claims to MTGLQ Investors, L.P. IEG was not involved in the sale of U.S. Bank's debt. Mr. Hopkins testified that he had no knowledge of the sale until the receiver informed him about it. He does not know what the terms of the sale were, including the exact amount of the debt or the

amount MTGLQ paid to U.S. Bank.  Recently, he became aware of
MTGLQ's proof of claim (Claim No. 20) which lists a total claim
of $4,504,749.40.  Mr. Hopkins testified that he would need to
reduce the total amount of his claim if this is actually the
amount MTGLQ paid for the U.S. Bank debt.

      IEG and Mr. Hopkins performed services under the Transaction
Consulting Agreement in attempting to sell Wayne Engineering or
find alternative loans to take out the existing lender.  The
Agreement is between the receiver and IEG and was drafted by IEG.
It provides that the receiver retains IEG as its exclusive sales
agent in connection with any Transaction.  Part IV defines
"Transaction" to mean "the reorganization, restructuring,
recapitalization, assignment, or assumption of substantially all
Company assets regardless of the means by which it is achieved."
IEG's fees under the Agreement are based on "Gross Transaction
Proceeds" which is defined in Part IV to mean "the sum received
by Client [the receiver] for any transaction arising from or
related to the services" including a list of services labeled (a)
through (k).  Mr. Hopkins believes that the sale of U.S. Bank's
debt to MTGLQ is included in these services under paragraphs (c),
(d) and/or (h).  Part V of the Agreement sets out IEG's fees,
providing for a "Fixed Fee" of $15,000 (which IEG has received),
plus a "Success Fee" of five percent of Gross Transaction
Proceeds, with a minimum of $160,000.

      Both U.S. Bank and the Receiver refused to pay IEG a fee
under the Agreement based on the U.S. Bank's sale of its debt to
MTGLQ.  The receivership was superseded by Debtor's Chapter 11
filing on July 18, 2005.  IEG argues the receivership was
obligated to pay its fee under the Agreement.  It maintains that,
after Debtor filed its bankruptcy petition, § 543(c)(1) obligated
Trustee to pay its fee as an administrative expense of the
bankruptcy estate.  Trustee asserts the receiver was not
obligated to pay IEG's fee under the Agreement, and thus the
claim is not enforceable against Debtor or Debtor's bankruptcy
estate.

## CONCLUSIONS OF LAW

      Once a proof of claim is filed, the claim is deemed allowed
and the proof constitutes prima facie evidence of the claim's
validity and amount.  In re Be-Mac Transp. Co., 83 F.3d 1020,
1025 (8th Cir. 1996); 11 U.S.C. § 502(a).  If an objection to the
claim is made, the court, after notice and a hearing, must
determine the amount of the claim fixed as of the date of the
petition.  11 U.S.C. § 502(b).  Bankruptcy Rule 3001(f) places
the burden of producing sufficient evidence to rebut the

presumption of validity on the objecting party.  <u>In re Dove-Nation</u>, 318 B.R. 147, 152 (B.A.P. 8th Cir. 2004).  Once this burden of production is met, the ultimate burden of persuasion as to the allowability of the claim resides with the creditor.  <u>Id.</u>; <u>Be-Mac Transp.</u>, 83 F.3d at 1025 n.3.  The validity of and defenses to a claim are generally determined under state law.  <u>In re Internet Navigator Inc.</u>, 293 B.R. 198, 204 (Bankr. N.D. Iowa), <u>aff'd</u> 301 B.R. 1 (B.A.P. 8th Cir. 2003).

Section 543 relates to duties of custodians, which include receivers appointed in a non-bankruptcy case.  <u>See</u> 11 U.S.C. § 101(11)(A).  Pursuant to § 543(c)(1),

> (c) The court, after notice and a hearing, shall –
>
> > (1) protect all entities to which a custodian has become obligated with respect to such property [of the debtor or of the estate] or proceeds, product, offspring, rents, or profits of such property.

Thus, the court is required to provide for the payment of all of a receiver's unpaid bills.  <u>In re 400 Madison Ave. Ltd. P'ship</u>, 213 B.R. 888, 898 (Bankr. S.D.N.Y. 1997).

Included as administrative expenses are "the actual, necessary expenses . . . incurred by . . . a custodian superseded under section 543 of this title, and compensation for the services of such custodian."  11 U.S.C. § 503(b)(3)(E).  Thus, a custodian, or receiver, is entitled to a first priority bankruptcy preference for reasonable expenses incurred in working with the debtor.  <u>In re San Vicente Med. Partners Ltd.</u>, 962 F.2d 1402, 1406 (9th Cir. 1992); <u>In re North Port Dev. Co.</u>, 36 B.R. 19, 20 (Bankr. E.D. Mo. 1983).

In awarding compensation to custodians under § 503(b)(3)(E), courts have required that the services of the custodian benefit the estate.  <u>In re Lake Region Operating Corp.</u>, 238 B.R. 99, 102 (Bankr. M.D. Pa. 1999).  An entity providing services to a receiver, which were beneficial to the succeeding estate in bankruptcy, is entitled to an administrative expense only to the extent the receiver would be entitled to such treatment under § 503(b)(3)(E).  <u>In re American Motor Club, Inc.</u>, 125 B.R. 79, 82 (Bankr. E.D.N.Y. 1991).  The burden is on the claimant to show entitlement to an administrative expense priority.  <u>In re Sevitski</u>, 161 B.R. 847, 854 (Bankr. N.D. Okla. 1993).

Under Iowa law, "[a] cardinal rule of contract construction or interpretation is the intent of the parties must control."

3

Hartig Drug Co. v. Hartig, 602 N.W.2d 794, 797 (Iowa 1999). Where the words of a contract are plain and clear, evidence of surrounding circumstances to aid interpretation is not admissible. Hawkeye Land Co. v. Iowa Power & Light Co., 497 N.W.2d 480, 485 (Iowa App. 1993). If the contract is ambiguous and uncertain, extrinsic evidence can be considered to help determine the intent of the parties. Hartig Drug, 602 N.W. 2d at 794.

> [A] contract is not ambiguous merely because the parties disagree over its meaning. Instead, an ambiguity occurs in a contract when a genuine uncertainty exists concerning which of two reasonable interpretations is proper.

Id. The Iowa Supreme Court has stated: "Of course language in a contract for commission which is not clear must be strongly construed against the one who supplied it." Stromberg v. Crowl, 132 N.W.2d 462, 464 (Iowa 1965) (considering commission for "exclusive" real estate broker).

## ANALYSIS

Under IEG's agreement with the receiver, it is entitled to a success fee of five percent of Gross Transaction Proceeds, which is defined to mean "the sum received by Client." The "Client" was the Receiver for Wayne Engineering Corp. When U.S. Bank sold its debt to MTGLQ Investors, L.P., the receiver received nothing. Thus, under the language of the agreement, IEG was not entitled to a success fee.

IEG argues that other language of the agreement shows an intent that it would be entitled to a fee if a sale of debt or refinancing occurred. Part IV of the agreement refers to "sale of debt" in the definition of "Transaction." Subparagraph (h) includes, within "any transaction arising from or related to the services [of IEG]", "consideration received by existing lenders of [Wayne Engineering] where a third party purchases such secured indebtedness direct from those existing lenders, effectively restructuring Company debt."

IEG was unaware of U.S. Bank's sale of its debt to MTGLQ until after it happened. It remains ignorant of the terms of the sale regarding the exact amount of the debt or the amount of the purchase price. Obviously, if this was a "transaction" contemplated by the agreement, it did not arise from or relate to IEG's services. Furthermore, construing the agreement against IEG, it contemplates that the receiver must receive funds in

order for IEG to be entitled to a success fee. IEG's assertion that the receivership benefitted from the sale of debt because lender fatigue was reduced is unavailing.

Even if the Court were to find IEG is entitled to a fee under the agreement, it is not entitled to an administrative expense claim under § 503(b)(3)(E). IEG has not shown that the sale of the debt had a tangible benefit for the succeeding estate in bankruptcy. Also, the evidence regarding the sale of U.S. Bank's debt is insufficient to allow the Court to determine with any confidence the exact amount of IEG's claim.

On the record presented, Trustee has rebutted the prima facie validity of IEG's proof of claim. IEG has failed in its ultimate burden of persuasion as to the allowability of the claim. The agreement requires that there be a sum benefitting the receivership in order for IEG to be entitled to a success fee. Bankruptcy law requires that there be some benefit to the estate in bankruptcy in order for expenses of the receiver to be given administrative priority. IEG's claim is not allowable as an administrative expense claim.

**WHEREFORE**, Trustee's Objection to Claim No. 52 of Innisbrook Equity Group/Jacques Hopkins is GRANTED.

**FURTHER**, IEG's claim is disallowed.

FURTHER, judgment shall enter accordingly.

DATED AND ENTERED:

March 5, 2007

PAUL J. KILBURG
U.S. BANKRUPTCY JUDGE